IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| SHANE L. FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:13-cv-01240-STA-egb |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Shane L. Ford filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on December 22, 2011. On February 15, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

1

cause for a rehearing."[1] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on May 17, 1974.[8] He has a high school diploma and past relevant work experience as a short order cook, production supervisor, line operator, and packer.[9]

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). See also *Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

[8] (R. 124, ECF No. 8-3.)

Plaintiff alleges disability due to degenerative disc disease of the cervical and lumbar spine, neck pain and numbness in his arm, post-traumatic stress disorder ("PTSD"), major depressive disorder, and polysubstance dependence; his alleged onset date of disability is October 15, 2008.[10]

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through December 31, 2013; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, PTSD, major depressive disorder, and polysubstance dependence; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except that he cannot more than frequently push, pull, reach, handle, or finger with his left arm and hand; cannot more than frequently reach overhead with either hand; cannot carry out complex or detailed instructions; cannot maintain attention or concentration for more than two hours without interruption; and cannot have more than occasional interaction with others; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that

---

[9] (*Id.* at 157-64, 170, 173-180, 186.)

[10] (*Id.* at 12, 124-26, 166.)

exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[11]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[12] The claimant bears the ultimate burden of establishing an entitlement to benefits.[13] The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[14]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[15]

---

[11] (*Id.* at 12-19.)

[12] 42 U.S.C. § 423(d)(1).

[13] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[14] *Id.*

[15] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[16] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past relevant work, there is a substantial number of jobs that exist in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. He specifically argues that the ALJ erred (1) by failing to consider all of his impairments, especially his mental impairments, (2) in his evaluation of the medical evidence, (3) in his weighing of Plaintiff's credibility, and (4) by considering Plaintiff's receipt of unemployment benefits as evidence that Plaintiff was not disabled. Plaintiff's arguments are not persuasive.

Step two of the five-step disability analysis looks at whether the claimant has a "severe medically determinable physical or mental impairment" or "a combination of impairments that is severe."[17] In the present case, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine, PTSD, major depressive disorder, and polysubstance dependence. When an ALJ determines that one or more impairments are severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"[18] And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error."[19]

---

[16] 20 C.F.R. § 404.1520(a).

[17] 20 C.F.R. § 404.1520(a)(4)(ii).

[18] Soc. Sec. Rul. 96–8p, 1996 WL 374184 at *5.

[19] *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In *Maziarz*, the agency determined that the claimant suffered from several severe impairments but that his

As in *Maziarz*, the ALJ in this case decided that Plaintiff suffered from some severe impairments but that his remaining conditions were not severe. In the remaining steps of the disability determination, the ALJ "consider[ed] limitations and restrictions imposed by all of [Plaintiff's] impairments," including his non-severe impairments.[20] Thus, the ALJ did not err at step two by failing to find other severe impairments.

Next, Plaintiff argues that the ALJ failed to properly consider the medical source statements. According to Plaintiff, because the ALJ gave significant weight to the opinion of Christopher L. Ray, Ph.D,[21] who performed a compensation and pension examination for an initial evaluation of Plaintiff's PTSD, the ALJ should have included all the limitations found by Dr. Ray in Plaintiff's residual functional capacity.[22]

Dr. Ray found that Plaintiff's PTSD and symptoms of major depressive disorder were "likely" caused by his in-service injury of a fifteen foot fall.[23] Dr. Ray opined that it was "likely" that Plaintiff's concentration deficits and hallucinations associated with his mental disorders would decrease his work productivity and reliability; his symptoms were deemed

---

cervical condition was not severe. Because the agency continued with the remaining steps in the disability determination and because the agency "properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity," the Court held that any error at step two was harmless and that it was, therefore, "unnecessary to decide" whether the agency erred in failing to find that the claimant's cervical condition constituted a severe impairment. *Id.*

[20] Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *5.

[21] The ALJ stated that "Dr. William Hartman" performed the examination. (R. 17.) Clearly, the examination and resulting opinion that the ALJ referred to is that of Dr. Ray. Because the name of the examiner does not impact the Court's decision, the Court finds this misnomer to be harmless error.

[22] (R. 661.)

[23] (*Id.* at 676).

"likely" to increase his absenteeism; and his irritability associated with his PTSD "may" result in negative interactions with coworkers and supervisors.[24] Dr. Ray also noted that Plaintiff's work history suggested that Plaintiff had at least some capacity to work.[25]

The ALJ concluded that Plaintiff had mental limitations as indicated in Dr. Ray's opinion, which he then accommodated. Because, according to Dr. Ray, Plaintiff would "likely" have concentration deficits as a result of his mental disorders, the ALJ limited Plaintiff to work that did not entail complex or detailed instructions or maintaining attention or concentration for more than two hours without interruptions. Because Dr. Ray opined that Plaintiff's impairments "may" result in negative interactions with coworkers and supervisors, the ALJ limited Plaintiff to work that entailed no more than occasional interaction with other people.

To the extent that Dr. Ray determined that Plaintiff would have an increase in absenteeism, Dr. Ray qualified his statement by stating that Plaintiff's symptoms would "likely" increase his absenteeism, but he did not indicate how often Plaintiff would be absent from work.[26] Dr. Ray's opinion that Plaintiff had at least some capacity to work suggests Dr. Ray did not feel that Plaintiff would have so many absences that he would not be able to work. Thus, Plaintiff has failed to show how he was more limited than the ALJ found based on Dr. Ray's opinion.

---

[24] (*Id.*)

[25] (*Id.*)

[26] (*Id.*)

Plaintiff also argues that the ALJ did not properly evaluate the opinion of Raheela Ayub, M.D.[27] According to Plaintiff, the ALJ did not clearly explain how much weight he was giving to Dr. Ayub's sitting and standing limitation.

Contrary to Plaintiff's argument, the ALJ described Dr. Ayub's examination as "perfunctory" and specifically stated that he was giving little weight to his opinions as to Plaintiff's limitations as to lifting, carrying, pushing, pulling, sitting, and standing "because these opinions were "not supported by reference to abnormal medical findings nor explained in any significant detail.[28] The ALJ did give "some weight" to Dr. Ayub's opinion that Plaintiff was limited to sedentary work.[29]

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[30] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[31] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[32] Opinions from

---

[27] The ALJ referred to Dr. Ayub as "Dr. Ayur." (R. 17.) However, the record shows that the correct spelling is "Ayub." (*Id.* at 631-76, Exb. 18, 47-48.)

[28] (*Id.* at 17.)

[29] (*Id.*)

[30] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[31] *Id.* § 404.1502, 404.1527(c)(2).

[32] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

8

nontreating sources, such as Dr. Ayub, are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[33] In the present case, the ALJ properly explained why Dr. Ayub's opinion was only given "some" weight.

Next, Plaintiff complains of the ALJ's credibility determination. The ALJ rather than this Court "evaluate[s] the credibility of witnesses, including that of the claimant."[34] A claimant's credibility comes into question when his "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence.[35] "To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[36] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[37] However, the ALJ's credibility finding "must find support in the record."[38]

---

[33] 20 C.F.R. § 404.1527(c).

[34] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[35] *Id.*

[36] *Id.*

[37] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[38] *Id.*

Here, the Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the severity of his alleged symptoms, and the record as a whole does not indicate that his condition was of disabling severity. In making his credibility determination, the ALJ considered diagnostic tests including x-rays and MRIs of Plaintiff's neck and back which showed no significant abnormalities.[39] Additionally, the clinical findings did not support a disabling impairment.[40] For example, an examination on March 2, 2009, showed that Plaintiff had normal alignment and good range of motion of the neck, no neurological deficits, and no obvious reflex, sensory, or motor deficits.[41] Other examinations also showed no significant clinical abnormalities on examination.[42]

As for Plaintiff's mental impairments, Plaintiff testified that he could watch a thirty minute television show, he took a "work keys test" at a career center, and he played on-line poker.[43] Plaintiff's testimony about his activities contradicted his allegation that he could not concentrate. His testimony that he had a girlfriend contradicted his allegation that he secludes himself, does not have friends, and avoids people.[44] It is well-established that an ALJ may discount a claimant's credibility when he "finds contradictions among the medical records, claimant's testimony, and other evidence."[45]

---

[39] (R. 237, 320-21, 421, 582, 637-38.)

[40] (*Id.* at 16, 421, 518).

[41] (*Id.* at 518).

[42] (*Id.* at 303-04, 319, 350).

[43] (*Id.* at. 42, 45-46, 667).

[44] (*Id.* at 13.)

[45] *See Whitfield v. Comm'r of Soc. Sec.*, 2014 WL 1329362 at *9 (W.D. Mich. Mar. 28, 2014).

Additionally, the ALJ noted that Plaintiff attempted to obtain prescription pain medication when he presented to the emergency room; Plaintiff failed to report that he had been at the emergency room the day before and had an x-ray which showed a fracture of his wrist.[46] Plaintiff apparently took off his splint prior to arriving to the hospital.[47]

Also diminishing his credibility is the fact that Plaintiff made inconsistent statements to medical sources. Plaintiff told various medical sources that he fell sixty or sixty-five feet while in the Air Force and broke his neck;[48] however, progress notes from the examination when Plaintiff fell showed that Plaintiff fell fifteen feet and diagnostic tests after the fall were negative.[49]

Plaintiff complains that the ALJ did not adequately discuss the factors listed in Social Security Ruling 96-7p in evaluating his credibility. SSR 96-7p provides factors that may be considered in evaluating credibility, including medical signs and laboratory findings; diagnosis and prognosis of the medical opinions; and statements and reports from the individual and the medical sources. SSR 96-7p also provides other factors, including daily activities; location, duration, and frequency of symptoms; factors precipitating and aggravating the symptoms; type, dosage, effectiveness and side effects of medication; treatment other than medication; measures used by individual to relieve symptoms; and any other factors concerning the individual's functional limitations. As already noted, the ALJ looked at several factors including the lack of significant clinical and diagnostic findings, the medical source opinions, Plaintiff's activities, his testimony that he received unemployment benefits and he could work but could not find a job,

---

[46] (R. 546).

[47] (*Id.*)

[48] (*Id.* at 292, 339, 390.)

[49] (*Id.* at 341, 671).

11

his drug seeking behavior, and his incorrect statement to medical sources regarding the nature of his accident in the Air Force.

Plaintiff argues that the ALJ improperly used the fact that he was receiving unemployment benefits as a basis for discrediting his credibility. Plaintiff received unemployment benefits and testified he was able to work but he could not find a job.[50] Plaintiff cites a November 15, 2006, letter from Chief Judge Frank Cristaudo discussing the issue of unemployment benefits.[51] The letter reminds ALJs that the receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits and is one of many factors to be considered in determining whether an individual is disabled. Here, the ALJ did not rely solely on Plaintiff's receipt of unemployment benefits as the basis for finding Plaintiff not fully credible. Instead, the ALJ considered this factor, along with other factors, in assessing Plaintiff's credibility. Accordingly, the Court finds no error in the ALJ's credibility determination.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[52] The Commissioner may carry this burden by applying the medical-vocational grids[53] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[54] However, if a claimant suffers from a

---

[50] (*Id.* at 45-47.)

[51] (*Id.* at 27.)

[52] *Jones*, 336 F.3d at 474.

[53] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[54] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

limitation not accounted for by the grids, as in the present case, the Commissioner may use the grids as a framework for her decision but must rely on other evidence to carry her burden. In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[55]

Here, the ALJ found that Plaintiff suffered from limitations beyond those accounted for by the grids, and therefore used the grids merely as a "framework" in determining whether Plaintiff could perform other work. The ALJ then relied on the testimony of a vocational expert in determining that there were a significant number of jobs in the national economy that Plaintiff could perform.[56] This testimony provides substantial evidence to support the ALJ's finding that Plaintiff could perform other work and is not disabled.[57]

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 30, 2016.

---

[55] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

[56] (R. 18 – 19.)

[57] *See Foster*, 279 F.3d at 356-57 (finding that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question).